UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| ARRIBA W. LEWIS, ) | |
| ) | |
| Petitioner-Defendant, ) | |
| ) | |
| v. ) | Case No. 17-cr-10004-JES |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Respondent-Plaintiff. ) | |

**ORDER AND OPINION**

**JAMES E. SHADID, U.S. District Judge:**

Before the Court is a Petitioner-Defendant Arriba W. Lewis' Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (d/e 54). Lewis argues that his federal conviction for possession with intent to distribute heroin should be vacated because it stems from traffic stop in which he alleges he was racially profiled. Put in the proper legal-terms, he argues that his counsel was ineffective for failing to raise a selective-enforcement claim. Additionally, he argues he received ineffective assistance of counsel because counsel did not perform a sufficient pre-trial investigation, because counsel did not call an expert at the suppression hearing, and because his sentencing range should not have been enhanced and he should not have been designated a career offender under the Sentencing Guidelines. He argues appellate counsel should have raised these issues, too, and also considered the applicability of the First Step Act. However, because Lewis has not shown that he was prejudiced by any allegedly deficient conduct, the Court DENIES the § 2255 Motion and DECLINES to issue a Certificate of Appealability.

## I. BACKGROUND

Lewis was pulled over while driving on the interstate and, in a subsequent search of his car, was found with 208 grams of heroin. Officer Sweeney, who pulled him over, testified that he observed two instances of Lewis commit the traffic violation of following another vehicle too closely prior to pulling him over. Lewis alleges, however, that all the other drivers' around him were driving in a similar manner but were not pulled over because they were white and he is black. While Lewis' defense counsel pursued a motion to suppress, he did not raise the issue of racial profiling or selective enforcement.

**A. The Traffic Stop[1]**

The traffic stop occurred in January 2017. Lewis was travelling south on Interstate 55 through McLean County in Illinois when he passed Officer Sweeney. Sweeney testified that he observed Lewis driving in a pack of vehicles travelling close to each other, that Lewis was gripping the wheel at 10:00 and 2:00, and appeared to be in a rigid position. Sweeney decided to pursue Lewis, but first stopped to see if another officer needed assistance. In the process, Sweeney triggered his dashcam. Sweeney then caught up to Lewis and saw Lewis ahead in the left lane at the preliminary stages of passing a truck in the right lane. Lewis then changed back to the right lane behind the truck. Sweeney calculated the time-distance between Lewis and the truck as 1.2 seconds, meaning Lewis followed 1.2 seconds behind the truck according to this calculation. This time-distance of roughly 1.2 seconds persisted for about 45 seconds despite the lack of traffic immediately behind him.

Sweeney then pulled Lewis over. As he approached, Sweeney noticed that the driver was the only occupant of the vehicle. As Lewis gave Sweeney his driver's license, Sweeney noticed

---

[1] The facts regarding the traffic stop are taken from the Court's Order and Opinion on Defendant's Motion to Quash and Suppress (d/e 22) and Lewis' § 2255 Motion (d/e 54).

that Lewis' hand was trembling. Lewis was asked to step out of the car and, although initially hesitant, did get out and sit in the front seat of Sweeney's vehicle.

Sweeney verified Lewis' driving privileges were valid and began to complete a written warning for following too closely. Sweeney told Lewis that he was getting a written warning for violating the "3 second" rule. While completing the warning, Sweeney learned that Lewis was on federal supervised release. Lewis stated that the car belonged to his grandfather and that he was going to St. Louis to pick up his 26-year-old son from school. He later said that he was picking up his son because he got into a fight with his girlfriend. Sweeney noticed that Lewis seemed unsure of where he was going in St. Louis and changed his reason as to why he was going there. As they continued to talk, Lewis became more nervous. Another trooper arrived and had his K-9 conduct a free air sniff around the vehicle. The K-9 gave a positive alert for the presence of narcotics within the vehicle. After the K-9's alert, the vehicle was searched, and a black plastic bag was found between the front passenger seat and the center console. Inside the bag was a clear bag that contained 208 grams of heroin. Lewis was then arrested.

**B. Criminal Proceedings**

Lewis was subsequently charged with one count of knowingly possession 100 grams or more of a mixture and substance containing a detectable amount of heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). *See* Indictment (d/e 10). The Government filed an Information, pursuant to 21 U.S.C. § 851, giving notice of its intent to seek enhanced statutory penalties based on two prior offenses.

Lewis' defense counsel filed a motion to suppress the evidence obtained from the search, arguing that Sweeney did not have grounds to initiate the traffic stop and that the stop was unreasonably prolonged. *See* d/e 16. This Court denied the motion after a hearing, finding that

probable cause existed to initiate the traffic stop and that Sweeney developed reasonable suspicion of criminal activity during the traffic stop to justify further detention after he had completed the written warning. *See* d/e 22.

Lewis then entered a conditional guilty plea (d/e 23) on August 24, 2017, in which he retained the right to appeal the Court's denial of his motion to suppress. The Presentence Investigation Report (PSR) determined that Lewis qualified as a career offender under § 4B1.1 of the Sentencing Guidelines based on two prior felony convictions: (1) On November 29, 1995, Lewis was convicted of the offense of First Degree Murder in Cook County Circuit Court Case No. 94CR3081101; and (2) On November 4, 2008, Lewis was convicted of the offense of Distribution of Crack Cocaine in U.S. District Court, Northern District of Illinois, Docket No. 07-CR-746. *See* PSR ¶23 (d/e 27). Lewis' counsel objected to the career offender designation because Lewis' murder conviction was more than fifteen years old. However, despite the objection, the probation office continued to find the murder conviction to be a qualifying offense. The probation office relied on Commentary Note 1 of § 4B1.1: "A sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted *unless the defendant's incarceration extended into this fifteen-year period*." PSR at p.27. Lewis' had been convicted in 1995, but he was not paroled until August 30, 2004, which was within the fifteen-year period.

At sentencing, on December 14, 2017, the Court agreed with the probation officer, found that Lewis was a career offender, and adopted the PSR without change. Lewis' designation as a career offender resulted in an advisory Sentencing Guidelines range of 262 to 327 months' imprisonment. *See* Statement of Reasons (d/e 31). Due to the § 851 enhancement, Lewis faced a mandatory statutory minimum sentence of ten years and a maximum of life. *See* 21 U.S.C.

§ 841(b)(1)(B). The Court sentenced Lewis to a below guidelines sentence of 240 months' imprisonment. Judgment (d/e 29).

Lewis appealed the denial of his motion to suppress, arguing that Officer Sweeney lacked lawful grounds to initiate the traffic stop and arguing Sweeney prolonged the stop without independent reasonable suspicion. *United States v. Lewis*, 920 F.3d 483, 486 (7th Cir. 2019). However, the Seventh Circuit affirmed the Court's ruling. *Id.* Lewis argued that the 3-second rule mentioned by Sweeney during the traffic stop was not a law, but a recommendation by the Illinois Secretary of State, so could not form the basis for probable cause. *Id.* The Seventh Circuit found this argument to be a "red herring." *Id.* The objective circumstances supported probable cause to pull Lewis over based on the two observations of him following too closely, which did violate 625 ILCS 5/11-710(a). *Id*. at 489-90. Moreover, the Seventh Circuit agreed that objective reasonable suspicion of criminal activity developed during the traffic stop to support further detention. *Id.*

**C. Section 2255 Motion**

Lewis has now filed this timely Motion to Set Aside, Vacate, or Correct Sentence pursuant to 28 U.S.C. § 2255 (d/e 54). Lewis argues that he received ineffective assistance of counsel during the pre-trial stages, at sentencing, and on appeal. He divides his motion into seven grounds for relief, although his petition is at times hard to follow and his claims often overlap. His first four grounds for relief relate to his motion to suppress and counsel's failure to investigate and pursue a racial profiling defense and for failing to challenge the standard of proof. He argues appellate counsel was ineffective for failing to raise these issues on appeal. He also argues that his counsel was ineffective for not arguing that his prior murder conviction should not have been used a predicate offense for his career criminal designation, and that

appellate counsel was ineffective for not arguing this on appeal. He also argues that he should not have been subject to the § 851 enhancement. Finally, he argues that appellate counsel should have raised arguments relating to the First Step Act, which was enacted while his appeal was pending. The Government has filed a response in opposition (d/e 64), and Lewis has filed a reply (d/e 65). After careful review of the record and the parties' briefs, the Court now denies Lewis' motion.

## II. LEGAL STANDARD

A person convicted of a federal crime may move to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Relief under § 2555 is an extraordinary remedy because a § 2255 petitioner has already had "an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). A petitioner may avail himself of § 2255 relief only if he can show that there exists "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude or result in a complete miscarriage of justice." *Boyer v. United States*, 55 F.3d 296, 298 (7th Cir. 1995), *cert. denied*, 116 S. Ct. 268 (1995).

Section 2255 is limited to correcting errors that "vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude." *Guinan v. United States*, 6 F.3d 468, 470 (7th Cir. 1993) (citing *Scott v. United States*, 997 F.2d 340 (7th Cir. 1993)). A § 2255 motion is not a substitute for a direct appeal. *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995), *cert. denied*, 116 S. Ct. 205 (1995); *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996). However, "it is generally proper to raise arguments of ineffective assistance of counsel for the first time on collateral review in a § 2255 petition because such claims usually. . . involve

evidence outside the record." *Galbraith v. United States*, 313 F.3d 1001, 1007 (7th Cir. 2002).

Lewis' claims arise from the Sixth Amendment, which guarantees criminal defendants effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-86 (1984). Under *Strickland's* two-part test, a petitioner must show both that his counsel's performance was deficient and that he was prejudiced as a result. *Vinyard v. United States*, 804 F.3d 1218, 1225 (7th Cir. 2015). In addressing performance, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 690. To prove prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one undermining the court's confidence in an outcome. *Id.*

Absent a sufficient showing of both cause and prejudice, a petitioner's claim must fail. *United States v. Delgado,* 936 F.2d 303, 311 (7th Cir. 1991). Therefore, the Court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

### III. DISCUSSION

**A. Lewis Did Not Receive Ineffective Assistance on His Motion to Suppress or With Regard to a Racial Profiling Defense.**

Much of Lewis' Motion relates to his belief that Sweeney only pulled him over because he was black and that defense counsel could have used a racial profiling defense to get the charges dismissed. Lewis believes that defense counsel could have used racial profiling as a means to succeed on his motion to suppress, or, as Lewis argues in his reply, in a motion to

dismiss for selective enforcement. While the Court does not wish minimize the issue of racial profiling in society today, Lewis has not met his burden to show it impacted the outcome in *his* case.

1. Motion to Suppress

Lewis first argues that a racial profiling defense could have been incorporated into his motion to suppress. Lewis argues that defense counsel was ineffective for not presenting his racial profiling argument, not seeking an expert regarding braking distance, and not challenging the standard of proof relied upon by this Court in concluding that probable cause existed. However, Lewis' arguments rely on a misunderstanding of Fourth Amendment law. A traffic stop is lawful if the officer has probable cause to believe a traffic violation occurred. *Whren v. United States,* 517 U.S. 806, 809–10, 116 S.Ct. 1769 (1996) (affirming trial court's finding of probable cause for traffic stop, regardless of officer's subjective motivation, where defendant's truck was stopped at stop sign for an unusually long time before turning suddenly without signal and driving off at an unreasonable speed). "Probable cause exists when 'the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense.'" *United States v. Simon*, 937 F.3d 820, 828–29 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 824 (2020) (quoting *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000)). The officer's subjective motivation for making the stop is irrelevant to the Fourth Amendment analysis. *Simon*, 937 F.3d at 829; *see also Whren,* 517 U.S. at 813.

Raising the potential for racial bias on the part of Sweeney during the traffic stop would not have advanced Lewis' motion to suppress because Sweeney's subjective motivations are irrelevant to the Fourth Amendment reasonableness determination. Lewis' arguments regarding the standard of proof are similarly misplaced. *See* Pet. Memo. at p.22-23 (de 54-1). Counsel

was not deficient for failing to challenge this Court's and the Seventh Circuit's use of an objective view to establish probable cause. The Court correctly applied an objective standard and it would have been frivolous for defense counsel to argue to the contrary. *See Resnick v. United States*, 7 F.4th 611, 621 (7th Cir. 2021) ("As we have held, counsel does not need to raise meritless arguments." (*citing Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017)).

Moreover, Lewis' arguments about the lack of a specific law called the "3-second rule" have already been found to be a red herring by the Seventh Circuit. *United States v. Lewis*, 920 F.3d 483, 486 (7th Cir. 2019). The Seventh Circuit found that the objective circumstances supported probable cause to pull Lewis over based on the two observations of him following too closely, which did violate 625 ILCS 5/11-710(a). *Id*. at 489-90. It is irrelevant that Sweeney referred to a "3-second rule" instead of 625 ILCS 5/11-710(a) during the traffic stop itself. Objectively, Sweeney had sufficient probable cause to believe that Lewis had violated 625 ILCS 5/11-710(a), and nothing more is needed under the Fourth Amendment. Use of an expert to bolster this argument would not have make it less of a "red herring" or otherwise relevant to the probable cause determination.

2. *Selective Enforcement*

Lewis' reply narrows in on the proper legal avenue to consider whether raising the issue of racial profiling could have impacted his case: a selective enforcement claim under the Equal Protection Clause. However, framing the claim as a selective enforcement claim under the equal protection clause would not have been successful either. "Selective enforcement occurs when police investigate people of one race but not similarly-situated people of a different race." *Conley v. United States*, 5 F.4th 781, 789 (7th Cir. 2021). A selective enforcement claim must be proven by a preponderance of the evidence. *Id*. at 790. A selective enforcement claim

requires proof that the decisionmaker's actions (1) had a discriminatory effect, and (2) were motivated by a discriminatory purpose. *Id.* A discriminatory purpose implies that the action was taken "at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Conley*, 5 F.4th at 789 (quoting *McCleskey v. Kemp*, 481 U.S. 279, 298 (1987)). A defendant "must show a discriminatory purpose 'in *his* case.'" *Id.* Moreover, it is not clear that dismissal of the indictment is the appropriate remedy in a criminal prosecution even where selective enforcement is proven. *See, e.g., United States v. Williams*, 431 F.3d 296, 299 (8th Cir. 2005) (stating that, even if there were a due process violation based on racial profiling, "it is uncertain that dismissal is an appropriate remedy"); *United States v. Mumphrey*, 193 F. Supp. 3d 1040, 1059 (N.D. Cal. 2016) ("It is not clear a civil remedy for selective enforcement leading to a prosecution is available, particularly if the defendant is convicted." (*citing Heck v. Humphrey*, 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)).

Here, Lewis relies on two pieces of evidence to support his selective enforcement claim: (1) he argues that he observed white drivers committing the same traffic violations; and (2) he provides statistics collected from the Illinois Department of Transportation regarding the race of those stopped in traffic stops. The question here is whether Lewis' counsel was ineffective for not using this evidence to proceeding with a selective enforcement defense. Lewis argues that using this evidence, his counsel could have filed a motion for discovery, which may have provided more evidence of Officer Sweeney's discriminatory impact and intent. The Seventh Circuit has found that the initial proof required to obtain discovery is not as high in selective-enforcement claims as it is in selective-prosecution cases. *See United States v. Davis,* 793 F.3d 712, 720 (7th Cir. 2015); *Conley v. United States*, 5 F.4th 781, 791–92 (7th Cir. 2021).

Accordingly, petitioners are not required "to show comparators before granting discovery" in selective-enforcement claims. *Conley*, 5 F.4th at 792.

The Government has not submitted any affidavit from Lewis' former counsel which might explain whether he investigated such a claim or otherwise made a strategic decision not to pursue a selective-enforcement claim. Nonetheless, based on Lewis' evidence, Lewis has not shown sufficient proof of selective enforcement or shown that a motion for discovery would have been granted, so he has not shown prejudice. Turning to the statistics first, the Court finds that these provide little support for his claim. "As a general matter, statistics can be 'a useful tool' that can establish discriminatory effect and provide powerful evidence of discriminatory intent if race can be isolated from other confounding variables." *Conley v. United States*, 5 F.4th 781, 796 (7th Cir. 2021). The potential relevancy for the reports Lewis points to is the "ratio" calculations that look at the likelihood that minority drivers will be stopped by law enforcement agencies. *See* Illinois Traffic and Pedestrian Stop Study 2017 Annual Report: Traffic Stop Analysis, IDOT, available online at https://idot.illinois.gov/Assets/uploads/files/Transportation-System/Reports/Safety/Traffic-Stop-Studies/2017/2017%20ITSS%20Executive%20Summary.pdf (last visited Oct. 27, 2021). The reports calculate the ratio between the percentage of minority stops of an agency and that community's estimated minority driving population. *Id.* at *4-5. For Illinois law enforcement agencies overall in 2017 (the year Lewis' traffic stop occurred), the ratio was 1.49. This means that a minority driver was 49 percent more likely to be stopped than would be expected based on the estimated minority driving population. *Id.* at *5. Lewis was stopped by the Illinois State police, however, and that agency reported a much lower ratio: 1.11 in 2017. *See* 2017 Illinois Traffic Stop Study Agency Rations 2013-2017, *IDOT*, available online at

https://idot.illinois.gov/Assets/uploads/files/Transportation-System/Reports/Safety/Traffic-Stop-Studies/2017/2017%20ITSS%20Agency%20Ratios%202013-2017.pdf (last visited Oct. 27, 2021). This means that, in 2017, a minority was 11 percent more likely to be stopped by the Illinois State police in 2017 than would be expected. While these statistics raise questions about the *overall* impact of race on traffic stops, they are a far cry from the statistics that have successfully been used to show a prime facie case of discriminatory impact in an *individual* case. *See, e.g., Davis,* 793 F.3d at 720 (finding limited discovery warranted in fictitious stash-house robbery cases where law enforcement recruited individuals to participate and of those prosecuted, 75 were black, 13 were Hispanic, and only 6 were white); *State v. Soto,* 324 N.J.Super. 66, 734 A.2d 350 (1996) (statistical evidence that blacks were 4.85 times more likely than whites to be stopped for traffic violations established *prima facie* case of discriminatory effect). While the Court does not minimize the societal harm these statistics indicate, an 11 percent increased likelihood of being stopped overall is not strong support for an *individual* defendant's claim that he was selected for the traffic stop over others due to his race.

Lewis also argues that there were five other cars driving near him on the road that day, and all were driving close to one another. He claims he was the only African American in this group, but does not explain how he was able to ascertain the race of all the drivers around him. Assuming the Court would credit Lewis' testimony at an evidentiary hearing that he knew the other drivers were white, his observations still fall short of providing proof of selective enforcement. Lewis does not claim that the other drivers "appeared rigid" or had both of their hands gripping the steering wheel. Sweeney testified that these additional factors contributed to his decision to pull Lewis over. Accordingly, the Court cannot find that these other motorists were similarly situated to Lewis.

Even if the Court found that the statistics and Lewis' testimony were enough to show discriminatory impact, also fatal to Lewis' claim is any evidence or indication that Sweeney had a discriminatory intent when he pulled Lewis over. There was no evidence from the stop itself that Sweeney intended to discriminate against African Americans when he pulled Lewis over. *See also, Chavez v. Illinois State Police*, 251 F.3d 612, 646 (7th Cir. 2001) (finding that even though officer stated that one can never tell with "you people" during the stop, racially insensitive remarks by themselves do not violate the constitution). The statistics alone are insufficient to make this showing. Lewis believes that effective counsel could have gotten testimony out of Sweeney at a hearing that would show discriminatory intent. But, there was a hearing on the motion to suppress and Officer Sweeney's admitted reasons for stopping Lewis did not include his race. The Court found Officer Sweeney credible at the suppression hearing. Lewis' motion offers no reason to believe why this result would change.

Accordingly, the Court finds that Lewis' counsel was not ineffective for failing to pursue a racial profiling/ selective enforcement defense. While not as demanding as a selective prosecution claim, the standard for a selective enforcement claim is still a high bar for a defendant to meet. Even if Lewis is right that his counsel failed to investigate such a claim, he has not shown prejudice because he has not shown that he would have succeeded on his claim or that he would have been entitled to a motion for further discovery into the matter. *See Resnick v. United States*, 7 F.4th 611, 621 (7th Cir. 2021) ("As we have held, counsel does not need to raise meritless arguments." (*citing Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017)).

**B. Lewis Has Not Shown That He Had Ineffective Assistance of Counsel At Sentencing.**

Lewis also argues that he would have had a lower sentence had defense counsel been more effective. Specifically, he argues that defense counsel could have could have prevented his

designation as a career offender under the sentencing guidelines and the application of the § 851 statutory sentencing enhancement. The Court finds neither argument convincing.

### 1. *Career Offender Designation*

Lewis' arguments about his career offender designation are meritless. Lewis was found to be a career offender under § 4B1.1 of the Sentencing Guidelines due to his prior convictions for First Degree Murder and Distribution of Crack Cocaine. Lewis argues that his counsel did not adequately challenge the use of his murder conviction to designate him a career offender. Lewis was convicted of First Degree Murder on November 29, 1995. Lewis' counsel objected to his career offender designation, because the murder conviction was more than fifteen years old. However, despite the objection, the probation office continued to find the murder conviction to be a qualifying offense, and the Court agreed. The probation officer relied on Commentary Note 1 of § 4B1.1: "A sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted *unless the defendant's incarceration extended into this fifteen-year period*." PSR at p.27. Lewis had been convicted in 1995, but he was not paroled until August 30, 2004, which was within the fifteen-year period.

Lewis argues now, however, that his counsel should also have argued that his murder conviction was not a crime of violence. A "crime of violence" is defined as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2) is murder…

U.S.S.G. § 4B1.2(a). The Seventh Circuit has held that Illinois second degree murder is a crime of violence under both the elements and the enumerated clauses. *United States v. Teague*, 884

F.3d 726, 728–29 (7th Cir. 2018). Second degree murder under Illinois law occurs when a person commits the Illinois offense of first degree murder but one factor from a list of mitigating factors is present. 720 ILCS 5/9-2. Accordingly, first degree murder is necessarily a crime of violence as well under *Teague*. Lewis' counsel was not deficient for failing to raise the challenge, nor can Lewis show prejudice because Lewis was properly designated a career offender.

Lewis also appears to argue that he should not have been convicted of First Degree Murder because his role in the offense was merely a driver. However, he could not have collaterally challenge his state offense at his sentencing hearing. *See Custis v. United States*, 511 U.S. 485, 114 S.Ct. 1732 (1994); *United States v. Jimenes*, 852 F.3d 631, 633 (7th Cir. 2017). So, his counsel was not ineffective for failing to raise such a challenge. Lewis does not assert that he was not actually convicted of Illinois First Degree Murder, even if he believes he should not have been. It was not error for the Court to rely on this conviction and any objection by defense counsel would have been frivolous.

In his reply, Lewis also argues that there was insufficient proof he was convicted of First Degree Murder because the Court relied on non-Shepard approved documents and his counsel should have objected. New arguments may not be raised for the first time in a reply. *See Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012) ("arguments raised for the first time in a reply brief are deemed waived"); *Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011) (same); *United States v. Foster*, 652 F.3d 776 n. 5 (7th Cir. 2001) ("The reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court."). However, because Lewis is proceeding *pro se* the Court will liberally interpret this argument as a motion to amend pursuant to Federal Rules of Civil Procedure 15(a)(2). *See Haines v. Kerner,* 404 U.S.

519, 92 S.Ct. 594 (1972) (holding that courts should liberally construe *pro se* pleadings as a matter of course). Nonetheless, such an amendment would be futile. At sentencing, Lewis did not object to the PSR's finding that he was convicted of First Degree Murder, so the Government had no reason to introduce any *Shepard* documents into the record. Again, Lewis has not claimed that he was convicted of any offense other than First Degree Murder, nor does he present any documentation in support of such a claim. Without such a showing, the Court cannot find Lewis' counsel ineffective for failing to object.

    2. *Statutory Sentencing Enhancement Under 21 U.S.C. § 851*

Lewis also contends that counsel was ineffective for not objecting to the Court making a finding that increased his mandatory minimum sentence. Lewis' conviction is under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Prior to Lewis' guilty plea, the Government filed an Information pursuant to 21 U.S.C. § 851, giving notice of its intent to seek enhanced statutory penalties based on two prior offenses. Under the law at the time, Lewis was subject to an enhanced sentencing range of ten years to life. Without the enhancement, his statutory sentencing range would have been five to forty years imprisonment. Lewis argues that the prior conviction needed to be presented to the grand jury and alleged in the indictment to be used as the basis for an enhancement. Lewis relies on *Alleyne v. United States*, 133 S.Ct. 2151 (2013), for his argument, but he misunderstands the holding. In *Alleyne,* the Supreme Court held that any fact that increases the mandatory minimum sentence is an "element" of the crime which must be submitted to the jury. However, *Alleyne* did not change the rule announced in *Almendarez-Torres v. United States*, 523 U.S. 224, 246, 118 S.Ct. 1219 (1998), which held that prior convictions are "sentencing factors" that can be determined by a judge and did not need to be alleged in an indictment or proven to a jury. *See United States v. Zuniga*, 767 F.3d 712, 718 (7th

Cir. 2014) ("[U]nder the narrow exception created by the Court in *Almendarez-Torres,* prior convictions are not facts that must be submitted to a jury, but rather may be found by judges."). Accordingly, counsel was not ineffective for failing to raise this meritless argument at sentencing.

The Government also argues that *Alleyne* is not retroactive. *See* Resp. at 31 (d/e 64). However, *Alleyne's* retroactively is not relevant. *Alleyne* was already decided by the time of Lewis' criminal proceedings and it certainly applies prospectively. The question is whether defense counsel was ineffective for failing to apply *Alleyne* to the case at hand. And, as discussed above, the Court finds that defense counsel was not ineffective because *Alleyne* does not apply here.

   C. **Appellate Counsel Was Not Ineffective.**

Finally, Lewis raises various reasons why he believes his appellate counsel was ineffective. He argues that appellate counsel should have challenged the district court's finding that his murder conviction was within fifteen years. As explained above, while Lewis' defense counsel made this challenge, it was meritless. Commentary Note 1 of USSG § 4B1.1 provides that "[a] sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted *unless the defendant's incarceration extended into this fifteen-year period*." Lewis had been convicted in 1995, but he was not paroled until August 30, 2004, which was within the fifteen-year period. Appellate counsel was not ineffective for failing to raise this meritless argument on appeal.

Lewis also argues that appellate counsel should have raised arguments relating to the First Step Act on appeal. Lewis concedes that he is "unsure as to how the First Step Act . . . may have impacted the appellate process." Pet. Memo. at 37 (d/e 54-1). The First Step Act did amend the mandatory minimums on drug offenses and modify which prior convictions qualify

under 21 U.S.C. § 851.  However, Lewis was sentenced in December 2017, and the First Step Act was not enacted until December 21, 2018.  The changes to the First Step Act were not retroactive.  *See* First Step Act of 2018 § 401(c), Pub. L. No. 115-391, 132 Stat 5194 ("This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.").  Accordingly, appellate counsel was not ineffective for failing to raise any arguments under the First Step Act.

Finally, Lewis also argues appellate counsel should have raised arguments regarding the motion to suppress, racial profiling, and the § 851 enhancement.  However, the Court has already found that the arguments were meritless and that his counsel was not ineffective for failing to argue them during his criminal proceedings in this Court.  Appellate counsel was also not ineffective for failing to raise these meritless arguments on appeal.

## IV. EVIDENTIARY HEARING

An evidentiary hearing is not always necessary in § 2255 cases.  *See Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001).  However, "[a] hearing is required unless the record conclusively shows that the movant is not entitled to relief."  *Hicks v. United States*, 886 F.3d 648, 650 (7th Cir. 2018); 8 U.S.C. § 2255(b).  Here, no hearing is necessary, because Lewis' claims of ineffective assistance of counsel do not entitle him to relief even if all the facts he alleged are true.

## V.  CERTIFICATE OF APPEALABILITY

If Petitioner seeks to appeal this decision, he must first obtain a certificate of appealability.  *See* 28 U.S.C. § 2253(c) (providing that an appeal may not be taken to the court of appeals from the final order in a § 2255 proceeding unless a circuit justice or judge issues a

certificate of appealability). A certificate of appealability may issue only if Petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a claim is resolved on procedural grounds, a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim *and* about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016) (*citing Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, the Court finds that Lewis has not made a substantial showing that he received ineffective assistance of counsel. Accordingly, the Court declines to issue a certificate of appealability.

## VI.  CONCLUSION

For the reasons stated, the Court DENIES Petitioner Arriba Lewis' Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 (d/e 54). The Court DECLINES to issue a certificate of appealability. The Clerk is directed to enter judgment and close the accompanying civil case, No. 20-cv-1110.


Signed on this 9th day of November 2021.

*/s/ James E. Shadid*
James E. Shadid
United States District Judge
